## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| JAMES M. ASSEY AND JOAN P. ASSEY,<br><br>    Plaintiffs,<br><br>vs.<br><br>AMERICAN HONDA MOTOR CO., INC.<br><br>    Defendant. | )<br>) Civil Action No. 3:22-cv-02647-JDA<br>)<br>)<br>)<br>) **PLAINTIFFS' MOTION IN LIMINE TO**<br>) **EXCLUDE DR. CAMACHO FROM**<br>) **OFFERING OPINIONS ON MR. ASSEY'S**<br>) **PRE-INJURY SPINAL CONDITION AND**<br>) **INJURY CAUSATION TESTIMONY**<br>)<br>)<br>)<br>)<br>) |

  COME NOW THE PLAINTIFFS, James M. Assey, ("Mr. Assey"), and Joan P. Assey ("Mrs. Assey"), (collectively, "Plaintiffs"), by and through the undersigned counsel, and hereby respectfully move this Honorable Court *in limine* for an order prohibiting counsel for the Defendant, American Honda Motor Co., Inc. ("Honda"), from making any comment, directly or indirectly, in any manner whatsoever, concerning any of the matters set forth herein, without first approaching the Bench and obtaining a ruling of the Court outside the presence and hearing of all prospective jurors, or jurors ultimately selected in this case, in regard to any alleged theory of admissibility of such matters.

  In addition, Plaintiffs move the Court for an order directing defense counsel to inform any and all defense witnesses and experts of the Court's order regarding these matters, and to instruct any and all such witnesses and experts to refrain from mentioning any such matters in the presence and hearing of all prospective jurors or jurors ultimately selected in this case until defense counsel

has obtained a ruling in compliance with this order that such matters would be admissible as evidence in this case.

## **FACTS**

This is an enhanced-injury products liability case against Defendant Honda arising out of the serious, permanent, life-altering, personal injuries sustained by the Plaintiffs following a foreseeable rear-end automobile collision on June 16, 2021, in Richland County, South Carolina ("the Incident"). During the Incident, the occupant protection system in Plaintiffs' 2020 Honda Odyssey. ("Subject Vehicle"), including the seatback of the driver's seat and driver's seat head restraint, failed catastrophically, rendering Mr. Assey a paraplegic. Here, Plaintiffs allege that the seatback and head restraint were defective and caused Mr. Assey to hyperextend over the back of the driver's seat during the Incident, resulting in his otherwise-preventable T9-T10 spinal cord injury and concomitant paralysis. Plaintiffs further allege that the defective seatback and head restraint systems created a "fulcrum" during the Incident which proximately caused these injuries. Plaintiffs' biomechanical expert, Dr. Ron Fijalkowski, opines that:

> So, it would have been when the collision forces were applies, Mr. Assey moved rearward in the kinematic pattern that we described previously. And as he extends over the seatback, the seatback creates a fulcrum at the T9-T10 level. And he experiences local hyperflexion – hyperextension that ultimately is responsible for the injury paradigm to his thoracic spine.

*See* Exhibit 1, Dr. Fijalkowski Dep. Tr. 79:22-80:4.

Defendant intends to call Dr. Daniel Camacho, a neuro-radiologist with a background in biomedical engineering to opine that Mr. Assey had a pre-existing underlying degenerative condition that made his spine rigid, brittle, and had an accentuated curve and was therefore more susceptible to fracture. *See* ECF Dkt. No. 76, Defense's August 12, 2024 Expert Disclosure. Dr. Camacho claims that this rigidity and curvature of Mr. Assey's spine was significant, so much so

that the force of the accident alone severed his spine at the T9-T10 vertebrae, by simply straightening up, without any hyperextension over the Subject Vehicle's seatback or head restraint. Honda, the proponent of Dr. Camacho's opinions, cannot discharge its burden of establishing that Dr. Camacho is qualified to render this opinion; that this opinion is based upon sufficient facts or data; that this opinion is the product of reliable principles and or methodology; or that it reflects a reliable application of a valid methodology to the facts of this case, rendering Dr. Camacho's conclusions inadmissible *ipse dixit* under Rule 702(a)-(d), Fed. R. Evid.

## LEGAL STANDARD

In *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137 (1999), the Supreme Court confirmed the applicable standard for determining the admissibility of expert testimony in federal court. In doing so, the Court removed any question that may have lingered after the decision of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579 (1993) as to the application of a *Daubert*-type analysis to all cases of expert testimony, not just cases involving "scientific" knowledge. *Kumho Tire*, 526 U.S. 137.

In *Kumho Tire*, the Court reconfirmed the authority of the trial judge to serve as "gatekeeper" for expert testimony in order to ensure that the particular expert testimony proposed in the case is sufficiently reliable to be offered to the jury: "[T]he expert's testimony will often rest 'upon an experience confessedly foreign in kind to [the jury's] own.'...And where such testimony's factual basis, data, principles, methods, or their application are called sufficiently into question ... the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.' " *Id.*, 526 U.S. at 149.

In *Kumho Tire*, the Supreme Court upheld the trial court's exclusion of certain expert testimony where the trial court found the conclusions drawn by that expert unreliable. The Court

recognized that this is a case-by-case analysis, where the trial court has to decide "whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors 'in deciding the particular issues in the case.' " *Id.*, 526 U.S. at 156.

The Fourth Circuit has confirmed this "gatekeeping" function of the trial court. "A district court considering the admissibility of expert testimony exercises a gatekeeping function to assess whether the proffered evidence is sufficiently reliable and relevant." *Westbeny v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Moreover, to satisfy [the] relevancy requirement, expert testimony must "fit" by providing "a valid scientific connection to the pertinent inquiry as a precondition to admissibility" *Sherman v. Westinghouse Savannah River Co.,* 263 F. App'x 357, 368 (4th Cir. 2008) (citing *See Daubert,* 509 U.S. at 591–92).

Additionally, courts do not have "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Such an application is unreliable because "there is simply too great an analytical gap between the data and the opinion offered." *Id.*

## ARGUMENT

Dr. Camacho is a neuro-radiologist who reads diagnostic medical films. Exhibit 2, Dr. Camacho's CV. While Dr. Camacho is qualified to provide a medical opinion on the appearance of Mr. Assey's x-rays and CT scans, he is not qualified to determine what the biomechanical forces were during the Incident and the movement of Mr. Assey involved in this particular accident, nor is he able to determine Mr. Assey's pre-injury spinal condition as his opinion is methodologically flawed. Dr. Camacho's opinion that Mr. Assey's purported stiff, hyperkyphotic thoracic spine caused the injury independent from any defect in the vehicle, is not based on any reliable methodology or analysis and is simply inadmissible *ipse dixit*.

4

### 1. Dr. Camacho cannot testify as to Mr. Assey's pre-injury spinal condition

Dr. Camacho knows nothing about any prior historical diagnosis of degenerative spondylosis, a general term for wear and tear of the spinal disks, for Mr. Assey. *See* Exhibit 3, Camacho Dep. Tr. 61:10-62:2. Dr. Camacho has not reviewed any radiological images, other than the images taken *after* the accident during Mr. Assey's emergency care and during his subsequent spinal surgery. *See* Exhibit 3, Camacho Dep. Tr. 59:4-8. To argue that Mr. Assey had extreme curvature of his spine *prior* to the Incident, Dr. Camacho measured points along an image of Mr. Assey's spine, taken *after* the Incident, to create a Cobb angle. A Cobb angle is a measurement for quantifying spine curvature, mainly for scoliosis.[1] Using his calculation of the Cobb angle, Dr. Camacho attempts to recreate what he believes was the curvature of Mr. Assey's spine pre-accident; however, by his own admission, this re-creation it is not completely accurate.

> Q: And are you aware of any learned treatises, any peer-reviewed papers or anything that provides a basis that the methodology you used to calculate the Cobb angle utilizing a post-trauma radiological film is a scientifically reliable methodology, generally accepted in the area and field of which you practice? Are you aware of a single article, a single treatise or anything that supports the work you've done in this case with respect to calculating the Cobb angle based on post-trauma radiological films.

---

[1] The only article Dr. Camacho references in his expert report for support of the Cobb angle technique and the angle of thoracic spinal kyphosis of the average 70–79-year-old male is Fon GT, Pit MJ, Thies AC (1980), "Thoracic Kyphosis: Range in Normal Subjects" *American Journal of Roentgenoology* 134:979-983. In that study, the Cobb technique was modified from measuring scoliosis to thoracic kyphosis. The study was conducted to determine the expected range of thoracic kyphosis in a group of patients. The patients were selected only in they were "normal" i.e. no abnormality of heart, lungs or thoracic skeleton and proper positioning and suitable radiographic technique. All of the patients were *ambulatory* to meet the requirement for positioning. The radiographs were all made with the patient *standing* and supine patients were excluded. Dr. Camacho testified that he relied on the measurements in the article despite that Mr. Assey would have been supine, although he believes it would have been a conservative estimate to extrapolate from supine. (Camacho Dep. Tr. 71:13-72:8). Instead, the only support for the accuracy of Dr. Camacho's method is his own say-so, and "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Kuhmo Tire,* 526 U.S. at 157.

> A: So measurements of Cobb angles, there's certainly a lot of literature out there. But specifically, you know, adding back that angle to get an approximation of what the preinjury geometry was I think makes – makes sense mathematically and biomechanically, but I can't cite a literature resource that will talk about that.

*See* Exhibit 3 Camacho Dep. Tr. 98:10-99:3.

Dr. Camacho estimated that Mr. Assey's thoracic spinal kyphosis was 69.4 degrees, approximately 29 degrees more than the average 70-79-year-old man according to the Fon article. *See* fn.1, infra. When Dr. Camacho was asked how he arrived at his measurements of the angles, he answered that he used a DICOM viewer computer program called OsiriX to measure the Cobb angle and using that computer program he deduced that Mr. Assey had a post injury angle measurement of 42.9 degrees. Exhibit 3, Camacho Dep. Tr. 91:14-92:10. Dr. Camacho then measured the angle of injury to be 26.5 degrees and added the two together to get a resulting pre-injury calculation of 69.4 degrees. Exhibit 3, Camacho Dep. Tr. 62:12-64:7. This, Dr. Camacho opines, would put Mr. Assey in such a hump-backed position that his head and shoulders would be positioned far from the seatback and thus unsupported. Therefore, under Dr. Camacho's hypothesis, the forward acceleration of the vehicle would cause Mr. Assey's unsupported, and purported brittle, spine to fracture just by straightening up. There is not enough objective scientific data to support the conclusion that Mr. Assey's T9-T10 spinal injury was solely caused by extension.

**2. Dr. Camacho is not qualified to offer opinions on injury causation**

Any opinion on causation requires an expert to examine the forces and motions involved in an accident to determine if they could have caused a specific injury. Dr. Camacho does no such analysis and while Dr. Camacho states that he is going into details "very pertinent to injury mechanism, injury causation, not necessarily for treatment," *see* Exhibit 3, Camacho Dep. Tr. 61:22-23, he agrees that he is not commenting on the biomechanical movement of Mr. Assey's

6

body and the moment of cause of the injury, detailed positioning, or magnitude of loads, and all those matters he defers to Dr. Toomey, Defendant's disclosed biomechanical expert. *See* Exhibit 3, Camacho Dep. Tr. 95:7-97:7-12. Dr. Camacho cannot give biomechanical opinions of the cause of the fracture without doing a biomechanical analysis, which he admits he did not do. Furthermore, any opinion as to injury causation by Dr. Camacho should be excluded as it is "needlessly presenting cumulative evidence" in violation of Fed. R. Evid. 403. Accordingly, any testimony on causation is prohibited.

Dr. Camacho's analysis that the pre-injury spinal condition of Mr. Assey caused the fracture just by straightening up, with forces he does not calculate, is erroneous and is based on nothing but his personal belief. Along with the admission that there is no literature he can cite to in support of his calculation of Mr. Assey's pre-injury condition, Dr. Camacho's testimony cannot be considered reliable. Dr. Camacho has no ability to determine what caused Mr. Assey's spine to fracture or when in the crash sequence it did fracture. As such, these *ipse dixit* opinions should be excluded. Dr. Camacho should not be allowed to come to trial to render any opinions as to the state of Mr. Assey's spine pre-accident, any form of accident causation, or biomechanics.

## CONCLUSION

For all the reasons set forth above, Plaintiffs respectfully request that this court grant their motion *in limine* to exclude Dr. Camacho from offering opinions that on Mr. Assey's pre-injury spinal condition and any injury causation testimony for lack of qualifications and reliability.

Pursuant to Local Civil Rule 7.02, DSC, undersigned counsel hereby certifies that Plaintiffs consulted with Defendant on March 10, 2025, and was unable to resolve the instant motion.

Respectfully submitted this 21st day of March 2025.

By: *s/ Kevin R. Dean*
Kevin R. Dean *(Fed. I.D.: 8046)*
Lee M. Heath *(Fed. I.D.: 9794)*
Marlon Kimpson, Esq. *(Fed I.D.: 17042)*
**MOTLEY RICE LLC**
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
Phone: (843) 216-9000
kdean@motleyrice.com
lheath@motleyrice.com
mkimpson@motleyrice.com

Luther J. Battiste, III, Esq.
**JOHNSON TOAL & BATTISTE, P.A.**
1615 Barnwell St.
Columbia, South Carolina 29202
Phone: (803) 252-9700
bat@jtbpa.com

*ATTORNEYS FOR PLAINTIFF*