UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| JAMES AND JOAN ASSEY | ) | Civil Action No.: 3:22-cv-02647-JDA |
|---|---|---|
| Plaintiffs, | ) | |
| vs. | ) | **DEFENDANT AMERICAN HONDA MOTOR CO, INC.'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE INJURY CAUSATION TESTIMONY BY PLAINTIFFS' TREATING PHYSICIANS AND LAY WITNESSES** |
| AMERICAN HONDA MOTOR CO, INC. | ) | |
| Defendant. | ) | |

Defendant American Honda Motor Co., Inc. ("AHM"), moves for an order *in limine* to (1) exclude injury causation testimony by Plaintiffs' treating physicians, including, but not limited to, Erwin Z. Mangubat, M.D. (Neurosurgery), and (2) limit the scope of lay witness testimony, including injuries about the cause and severity of the injuries Plaintiffs allegedly sustained in the crash that gives rise to this lawsuit.[1] None of these individuals are qualified to testify about ***the cause or mechanism*** of Plaintiffs' alleged incident-related injuries and therefore this Court should preclude these witnesses from offering such improper opinion testimony at trial.

I. **STATEMENT OF FACTS**

This automotive product liability action arises from a two vehicle, high speed collision on westbound Interstate 26, near the interchange with Interstate 20, in Columbia, South Carolina. Plaintiffs were driving their 2020 Honda Odyssey minivan ("Odyssey") in the travel lane closest to the center concrete median barrier. The Odyssey was impacted in the rear by a 2018 Dodge

---

[1] While this motion focuses on a lay witness's inability to offer testimony about the mechanism of Plaintiffs' injuries specifically, as a general proposition, no lay witness may testify about matters involving specialized scientific or technical knowledge, under FED. R. EVID. 701. Permitting Plaintiffs to elicit such testimony would serve only to prejudice, confuse and mislead the jury. Accordingly, Plaintiffs should also be precluded from offering any testimony relating to any legal conclusion which is not based on the perception of the lay witness.

Charger sedan being driven at a very high speed in the same direction and travel lane as the Odyssey. The force of the impact propelled the Odyssey forward. The Odyssey came to rest with its driver's side against the concrete median barrier. Mrs. Assey was able to exit the Odyssey under her own power. Mr. Assey required extrication from the Odyssey. Mr. Assey experienced significant injuries during the crash sequence, primarily a fracture to his thoracic spinal vertebrae that resulted in paraplegia.

Plaintiffs claim that the driver's seat and seat belt were defectively designed and manufactured. Specifically, Plaintiffs claim that the design of the driver's seat and driver's seat belt permitted Mr. Assey to improperly ramp up and over the top of the Odyssey's driver seat. Due to these alleged defects, Plaintiffs claim they are entitled to an award of damages in this case.

## II. EVIDENCE TO BE EXCLUDED

In Plaintiffs' expert designation, they have "reserved the right to elicit expert testimony regarding the Plaintiffs' injuries, medical care, treatment, and damages from previously identified non-retained individuals or entities, which are not required to provide a written report under Rule 26(a)(2)(C), Fed. R. Civ. P." [ECF No. 75]. Plaintiffs referred AHM to their discovery responses which listed treating medical providers and the medical records from those providers. [*Id.*]. None of the medical providers Plaintiffs directed AHM to, including Mr. Assey's neurosurgeon Dr. Mangubat, are qualified as biomechanics experts to render opinions about the cause of Mr. Assey's alleged accident-related injuries as such opinions are outside the scope of their medical specialties. But Plaintiffs have already attempted to elicit biomechanic and injury causation opinions from Dr. Mangubat during his deposition. For example:

> Q. So in this case there is an allegation that the headrest itself was ejected during the crash and that Mr. Assey's body was up and over the back and hyperextended over the back of – of his seat causing that injury. I mean, could the lack of a headrest cause an injury like this?

2

Exhibit A, Dep. Tr. of Dr. Mangubat, at 17:6-11. Dr. Mangubat responded and essentially demonstrated how he, a neurosurgeon, was not qualified to render an injury causation opinion:

> I mean, you know, I don't know necessarily if it would have prevented it, but it may have reduced the amount of extension that he could have had. […] But I can't say for sure that having the headrest or not would have prevented the injury. It was – yeah. I mean, it was – all I can say is it was a hyper – hyperextension injury. So yeah.

*Id.* at 17:18-18:3. Plaintiffs should not be permitted to elicit injury causation testimony from Dr. Mangubat or other treating physicians at trial since this testimony is outside the scope of these physicians' expertise.

Further, if Plaintiffs are directing AHM to other lay witnesses they have identified in discovery, including, but not limited to, Plaintiffs themselves, those lay witnesses may not testify about the medical cause of Mr. Assey's alleged injuries, or to Mr. Assey's diagnoses, current or future medical condition, prognosis, or as to the necessity or probability of any future treatment or surgery.

### III. LEGAL ARGUMENT

#### A. Plaintiffs' Treating Physicians are not Qualified to Offer Injury Causation Opinions

AHM anticipates that Plaintiffs may try to offer improper opinion and testimony from Mr. Assey's treating physicians at trial in violation of FED. R. EVID. 702 and therefore, moves for an order precluding them from doing so. Plaintiffs did not specifically designate any of Mr. Assey's treating physicians as experts in their Expert Designation – they merely reserved the right to do so. [ECF No. 75]. Plaintiffs also did not specify in their designation that any of Mr. Assey's providers would offer any injury causation testimony at trial. [*Id.*]. This failure to disclose in their expert designation that Plaintiffs' treating providers may offer injury causation opinions at trial disposes of this issue and should preclude such testimony at trial. *See* FED. R. CIV. P. 26(a)(2)(B)

(governing the disclosure of proposed expert testimony); 37(c)(1) (prohibiting a party who fails to make a disclosure as required by Rule 26(a) from supplying such evidence at trial).

Notwithstanding the above, none of Plaintiffs' treating physicians have expressed that they have experience in occupant kinematics or biomechanics. Plaintiffs will seek to offer the testimony of Dr. Mangubat at trial. Dr. Mangubat specializes in neurosurgery. Exh. A, Dep. Tr. of Dr. Mangubat, at 5:18-8:23. Dr. Mangubat does not have any training or formal education in biomechanics. *Id.* at 23:8-10. Dr. Mangubat has no training in kinematics. *Id.* at 23:11-12. Accordingly, Dr. Mangubat is not a biomechanics expert qualified to render opinions about the cause of Mr. Assey's alleged accident-related injuries.

Expert testimony is not admissible unless the proponent of that testimony first demonstrates, and the trial court in its role as "gatekeeper" determines, that the expert is qualified and that the proffered opinion of that expert is reliable based on sufficient facts and date, as well as the evidence. *See Watson v. Ford Motor Co.*, 389 S.C. 434, 446, 699 S.E.2d 169, 175 (2010) ("expert testimony is not admissible unless it satisfies all three requirements with respect to subject matter, expert qualifications, and reliability."). *See also State v. Henry*, 329 S.C. 266, 278, 495 S.E.2d 463, 469 (S.C. Ct. App. 1997) ("the relevant inquiry concerning qualification of the proffered expert is whether the witness possesses the necessary skill, learning, education, training, knowledge, or experience to enable the witness to give opinion testimony."). To be reliable, the basis for the expert's opinion must be "scientific, technical or specialized knowledge." FED. R. EVID. 702.

One must be a qualified expert concerning the specific subject matter that is the subject of the disputed testimony to render an admissible expert opinion – simply being an "expert" in something is not sufficient. *See Daves v. Cleary*, 355 S.C. 216, 228, 584 S.E.2d 423, 429 (S.C. Ct.

App. 2003) ("To be considered competent to testify as an expert, "a witness must have acquired by reason of study or experience or both such knowledge and skill in a profession or science that he is better qualified than the jury to form an opinion on the particular subject of his testimony."). That is why courts universally hold that a treating physician who offers opinion testimony about the cause of a plaintiff's injuries requires the plaintiff to establish that the doctor has the requisite qualifications in the area of injury causation, and that their opinions are sufficiently reliable. *See, e.g.*, *Perkins v. U.S.*, 626 F. Supp. 2d 587, 592-95 (E.D. Va. 2009) (excluding causation testimony from plaintiff's treating orthopedic surgeon because he (1) based his causation opinions solely on the plaintiff's self-report that the injuries were caused by a motor vehicle accident; (2) did not adequately investigate the plaintiff's relevant medical history; and (3) failed to consider alternative explanations for the plaintiff's injuries).

Plaintiffs' treating physicians, including his neurosurgeon Dr. Mangubat, are not qualified to render well-founded opinions about whether the accident caused Plaintiffs' injuries. While these witnesses may be competent to render opinions about the general existence of Mr. Assey's injuries, the appropriate treatment for them, and Mr. Assey's prognosis, this Court has been presented with no evidence suggesting that Dr. Mangubat, nor any other physician, is qualified in the science of accident injury causation.

To be sure, this is not a "medical causation" case in which Mr. Assey's treating doctors are opining about the cause and origin of a disease or condition they have studied, researched, or perhaps diagnosed. Instead, this is an automobile accident "injury causation" case. An opinion about injury causation from a motor vehicle accident requires the expert witness to consider the specific circumstances of a motor vehicle accident including, but not limited to, crash variables characteristics such as vehicle speed, velocity, body position, rotation, body impacts, coefficients

of restitution, energy absorption rates, event timing, principal direction of force, and the magnitude of force, among others. Accordingly, as a treating physician who has not studied the circumstances of the motor vehicle accident itself, any testimony about these matters as they relate to causation is prohibited under FED. R. EVID. 702.

Biomechanics is a highly specialized engineering-based field involving a detailed knowledge of human anatomy, engineering, motor vehicle occupant kinematics (motions) and the biomechanical response and tolerance of different tissues and body structures to forces (magnitude, direction, and duration) that exist in a motor vehicle crash. Such opinions are outside the scope of Dr. Mangubat's medical specialties as a neurosurgeon. During Dr. Mangubat's deposition on September 13, 2024, he denied any training or formal education in biomechanics. *See* Exh. A, at 23:8-10. He similarly denied having any training or formal education in kinematics. *Id.* at 23:11-12. He has not published on spinal cord injury causation, or the forces required to cause spinal cord injuries, and he has not authored any publications on spinal cord degeneration. *Id.* at 23:15-23. Even when Plaintiffs attempted to elicit an opinion from Dr. Mangubat about injury causation, Dr. Mangubat acknowledged that he could not say for certain "that having the headrest or not would have prevented the injury." *Id.* at 17:18-18:3. This is because Dr. Mangubat is an expert in neurosurgery, not injury causation. His opinions should therefore be limited to neurosurgery – an area which he sustains the proper expertise – and must not include testimony about injury causation.

Injury causation testimony from Dr. Mangubat, or any other treating provider, should also be excluded under FED. R. EVID. 401, 402 and 403. Dr. Mangubat has already testified that he could not say for certain whether the lack of headrest could result in Mr. Assey's injuries. Exh. A, at 17:18-18:3. Thus, even if he was qualified to give an opinion as to injury causation, Dr.

Mangubat's testimony would not have the tendency to make a fact more or less probable than it would be without his testimony. *See* FED. R. EVID. 401, 402. Accordingly, his opinions on injury causation are irrelevant.

Even if relevant, the probative value of his "I don't know" testimony is substantially outweighed by the danger of unfair prejudice, misleading the jury, and needlessly presenting cumulative evidence, and therefore it must also be excluded under FED. R. EVID. 403. If Dr. Mangubat or any other treating physician is permitted to give biomechanic opinions to a jury despite their not being a biomechanic, AHM would be unfairly prejudiced and have to spend needless time telling the jury why their opinions are not credible. A jury may also give unfair weight to Dr. Mangubat's testimony as a neurosurgeon without ever realizing that Dr. Mangubat does not have the proper training to offer an injury causation opinion. This confusion and misleading of the jury would certainly be unfairly prejudicial to AHM.

Finally, any injury causation opinion from Dr. Mangubat, or any other treating physician, is cumulative of Plaintiffs' biomechanical expert, Dr. Ronald J. Fijalkowski, who has already proffered an injury causation opinion for this case. Dr. Fijalkowski is expected to opine at trial that Mr. Assey's injuries were caused when he moved rearward until he hyperextended over the seatback due to seatback and head restraint failures. Exhibit B, Fijalkowski Report at 14. Plaintiffs should not be permitted to present improper opinions through treating physicians that echo Dr. Fijalkowski's report and testimony. To allow such would give Plaintiffs an unfair bite at the same apple. Accordingly, Dr. Mangubat and other treating physicians should not be permitted to present injury causation opinions on these grounds as well.

Analysis and opinions about injury causation to a motor vehicle occupant is substantially different from medical opinions about the nature of an injury, the recommended course of

treatment to repair and injury and the patient's prognosis. Analysis and opinion about injury causation to a motor vehicle occupant involves the engineering base discipline of biomechanics which Dr. Mangubat and Mr. Assey's other treating physicians are not qualified in. Accordingly, they lack the engineering and mechanical training necessary to render any form of accident injury causation or biomechanics opinions in this case.

**B. Lay Opinions as to the Causation of Medical Damages, Mr. Assey's Diagnoses, Current or Future Medical Condition, Prognoses, or the Need for Future Treatment are Not Admissible**

Plaintiffs or other lay witnesses may not testify about the medical cause of Mr. Assey's alleged injuries, or to Mr. Assey's diagnoses, current or future medical condition, prognoses, or as to the necessity or probability of any future treatment or surgery, as such testimony is inadmissible.

FED. R. EVID. 701 states:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions of inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or specialized knowledge within the scope of Rule 702.

This rule of evidence formalizes established law for limiting the range of testimony by a lay witness.

FED. R. EVID. 701 was amended in 2000. The commentary to it states that the 2000 amendment was enacted "to *eliminate the risk that the reliability requirements set forth in Rule 702 would be evaded through the simple expedient of offering an expert witness in lay witness clothing.*" Under the amendment, a witness' testimony must be scrutinized under the rules regulating expert opinion if the witness is providing testimony based on scientific, technical, or other specialized knowledge within the scope of FED. R. EVID. 702. *See generally Asplundh Mfg.*

*Div. v. Benton Harbor Eng'g,* 57 F.3d 1190 (3d Cir. 1995). The commentary to FED. R. EVID. 701 to the 2000 amendment also states that:

> By channeling testimony that is actually expert testimony *to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26* and Fed. R. Crim. P. 16 *by simply calling an expert witness in the guise of a layperson. See Joseph, Emerging Expert Issues Under the 1993 Disclosure Amendments to the Federal Rules of Civil Procedure,* 164 F.R.D. 97, 108 (1996) (noting that "*there is no good reason to allow what is essentially surprise expert testimony.*" and that "*the Court should be vigilant to preclude manipulative conduct designed to thwart the expert disclosure and discovery process*") ... The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirement of the Civil and Criminal Rules.

FED. R. EVID. 701, 2000 Amendment Advisory Committee Note (emphasis added).

In order "to be 'qualified' as an expert, a witness must have 'knowledge, skill, experience, training, or education' in the subject area in which he intends to testify." *Ravenell v. Pugmill Sys., Inc.*, C.A. No.: 2:13-cv-00815-PMD, 2014 WL 7146848, *5 (D.S.C. Dec. 15, 2014). Implicit in this standard is the idea that the proposed expert does, in fact, have superior knowledge, skill, experience, training or education. Plaintiffs have not established that they or any lay witnesses they may offer at trial have any superior knowledge, skill, experience, training or education that would qualify them to give a reliable medical opinion about the nature, extent and causation of Mr. Assey's claimed injuries, diagnoses or prognoses, or the need for any future medical treatment. Therefore, any such opinion testimony from Plaintiffs or other lay witnesses should be excluded during trial.

## IV. <u>CONCLUSION</u>

For all these reasons, Defendant American Honda Motor Co., Inc. respectfully requests that this Court enter an order, *in limine*, to preclude Plaintiffs' treating physicians, including, but not limited to, Dr. Mangubat, along with their lay witnesses, from offering improper opinion

testimony about the cause of Plaintiffs' alleged accident-related injuries at trial, as they are not qualified to do so.

    Respectfully submitted,

    BOWMAN AND BROOKE LLP

    By: *s/ Patrick J. Cleary*
    Patrick J. Cleary (Fed. Bar No. 11096)
    Patrick.Cleary@bowmanandbrooke.com
    1441 Main Street, Suite 1200
    Columbia, SC 29201
    Phone: (803) 726-7420; Fax: (803) 726-7421

    WATKINS & EAGER, PLLC
    David L. Ayers (MSB No. 1670, admitted *Pro Hac Vice*)
    dayers@watkinseager.com
    Briana A. O'Neil (MSB No. 105714, admitted *Pro Hac Vice*)
    boneil@watkinseager.com
    400 East Capitol Street (39201)
    P.O. Box 650
    Jackson, MS 39205
    Phone: (601) 965-1900; Fax: (601) 965-1901

    Attorneys for Defendant
    *AMERICAN HONDA MOTOR CO., INC.*

March 21, 2025
Columbia, South Carolina