IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| James M. Assey, Joan P. Assey, | ) | Case No. 3:22-cv-02647-JDA |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| American Honda Motor Co., Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on Defendant's motion for partial summary judgment [Doc. 102] and motions to exclude the testimony of Michael Markushewski and Bruce Distell, M.D. [Docs. 100; 101].

Plaintiffs filed an Amended Complaint on September 15, 2023, asserting claims for design defect under strict liability and negligence theories (Counts I and III), manufacturing defect under strict liability and negligence theories (Counts II and III), failure to warn under strict liability and negligence theories (Counts III and IV), punitive damages (Count VI), and loss of consortium (Count V). [Doc. 43.] On December 3, 2024, the parties stipulated to the dismissal of some of Plaintiffs' claims to the extent they are related to the design of seat belt assembly, including design defect under strict liability and negligence theories and punitive damages. [Doc. 99.] Also on December 3, 2024, Defendant filed a motion for partial summary judgment on all remaining claims against it except Plaintiffs' claims for design defect of the driver's side seat based on strict liability and for loss of consortium [Doc. 102], a motion to exclude the expert testimony of Mr. Markushewski [Doc. 100], and a motion to exclude the expert testimony of Dr. Distell regarding biomechanics [Doc. 101]. Plaintiffs filed responses to each motion on

December 17, 2024 [Docs. 106; 107; 109], and Defendant filed replies on December 23, 2024 [Docs. 111; 112; 113]. Accordingly, these motions are ripe for review.

## BACKGROUND[1]

In ruling on a motion for summary judgment, this Court reviews the facts and reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013).

This action arises out of a motor vehicle collision (the "Accident") that occurred on June 16, 2021, in which a 2018 Dodge Charger operated by an individual named Carban Epps struck Plaintiffs' 2020 Honda Odyssey (the "Subject Vehicle") from behind, resulting in severe injuries to Plaintiff James Assey. [Doc. 103 ¶¶ 1–5.] Defendant was the authorized distributor of the Subject Vehicle to authorized Honda dealerships for sale to the retail public. [*Id*. ¶ 7.] Defendant provided an express limited written new vehicle warranty with the initial sale of the Subject Vehicle and was responsible for creating the Owner's Manual included in the Subject Vehicle, and other Honda entities were responsible for the design, manufacture, and testing of the Subject Vehicle before it was mass produced. [*Id*.] Pursuant to an agreement between the parties, Plaintiffs agreed that Defendant would be the only defendant in this litigation, and Defendant agreed that it would not raise certain defenses related to its role as a distributor and that it would

---

[1] Pursuant to the undersigned's Rule 56 Summary Judgment Motion Procedures, the parties submitted a joint statement of stipulated material facts [Doc. 103], a movant's statement of material facts [Doc. 104], an opponent's statement of material facts [Doc. 108], and a reply statement of material facts [Doc. 115]. The Court will cite to these documents, along with the record in this case, for the relevant facts included herein.

obtain information and documents from other Honda entities related to the Subject Vehicle. [*Id*. ¶ 8.]

Plaintiffs filed this action on August 11, 2022, claiming that the Subject Vehicle's occupant restraint system caused or contributed to Mr. Assey's injuries, and that Defendant failed to warn him of these defects. [*Id*. ¶ 5; *see* Doc 1.]

## DISCUSSION

As stated, Defendant moves for summary judgment on all claims asserted against it except Plaintiffs' claims for design defect of the driver's side seat based on strict liability and for loss of consortium. [Doc. 102.] Defendant additionally asks this Court to exclude the expert testimony of Mr. Markushewski and to exclude the expert testimony of Dr. Distell regarding biomechanics in its consideration of Defendant's motion for partial summary judgment and at trial. [Docs. 100; 101.] For the reasons discussed below, the Court denies Defendant's motion to exclude the expert testimony of Mr. Markushewski, grants Defendant's motion to exclude the testimony of Dr. Distell regarding biomechanics, and grants in part and denies in part Defendant's motion for partial summary judgment.

**Motions to Exclude**

The Court begins by addressing Defendant's motions to exclude expert testimony, as they seek to exclude opinions and testimony from the Court's analysis of Defendant's motion for partial summary judgment.

### *Applicable Law*

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony.[2]  It provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Accordingly, Rule 702 requires a court to conduct a two-part analysis: first, the court must determine whether an expert is qualified to offer an opinion on the subject matter at issue by virtue of "knowledge, skill, experience, training, or education"; second, the court must determine whether the particular opinion offered satisfies the four requirements in subsections (a) through (d) of Rule 702.

"Implicit in the text of Rule 702 . . . is a district court's gatekeeping responsibility to 'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to

---

[2] Although Rule 702 governs trial testimony, "[a] trial court has discretion to conduct the reliability and helpfulness analysis that *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)] and Rule 702 require in the context of a summary judgment motion, and to exclude expert testimony found wanting from its consideration in ruling on the motion." *Arsanjani v. United States*, No. 19-1746 (JEB), 2023 WL 3231101, at *3 (D.D.C. May 3, 2023) (alteration in original) (internal quotation marks omitted).  The Court will thus weigh the 702 factors in ruling on the pending motions to exclude.

the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597). To conduct this gatekeeping function, a court must conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. *Daubert* offers "several guidepost factors that the court *may* consider in assessing an expert's evidentiary reliability," including "whether a theory or technique can be (and has been) tested; whether the theory or technique has been subjected to peer review and publication; whether a given technique has a high known or potential rate of error and whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 959 (4th Cir. 2020) (alterations and internal quotation marks omitted). The Supreme Court's "emphasis on the word 'may' . . . reflects *Daubert's* description of the Rule 702 inquiry as 'a flexible one.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 594). The party offering the expert opinion evidence bears the burden of establishing its admissibility by a preponderance of proof. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

Rule 26(a)(2)(D)(ii) governs admissibility of rebuttal expert reports, which are "intended solely to contradict or rebut evidence on the same subject matter identified by another party." *See Charleston Med. Therapeutics, Inc. v. AstraZeneca Pharm. LP*, No. 2:13-CV-2078-RMG, 2015 WL 12805687, at *2 (D.S.C. July 8, 2015) (internal quotation marks omitted). "A party may not offer testimony under the guise of 'rebuttal' only to

provide additional support for his case in chief." *Wise v. C. R. Bard, Inc.*, No. 2:12-cv-01378, 2015 WL 461484, at *2 (S.D.W. Va. Feb. 3, 2015) (cleaned up).

### *Analysis*

<u>Motion to Exclude the Expert Testimony of Michael Markushewski</u>

In its motion to exclude the expert testimony of Mr. Markushewski, Defendant argues that Mr. Markushewski's opinions must be excluded because he did not use reliable methodology in reaching his conclusion that the seat belt in the Subject Vehicle was defective.[3]  [Doc. 100.]

Defendant does not challenge Mr. Markushewski's qualifications, and the Court concludes that Mr. Markushewski is qualified to opine on the matters discussed in his report.[4]  Instead, Defendant argues that Mr. Markushewski's opinions fail to meet the reliability requirements of Rule 702 because he relied on data about seat belt performance during 35-mile-per-hour frontal impact barrier crash tests using a fifteenth percentile dummy, and the Accident was a rear-impact collision involving a larger than fiftieth percentile driver.  [*Id*.; *see* Docs. 100-1 at 14; 100-2 at 3 (35:21–22), 4 (36:20–22).]

---

[3] The Court notes that to the extent Mr. Markushewski intends to offer opinions regarding design defects in the driver's side seat belt assembly specifically, these opinions are irrelevant in light of Plaintiffs' voluntary dismissal of all claims related to design defects in the driver's seat belt assembly.  [*See* Doc. 99.]

[4] Mr. Markushewski has a Bachelor of Science degree in Mechanical Engineering Technology and is the Chief Technical Officer for ARCCA, LLC, located in Penns Park, Pennsylvania.  [Doc. 100-1 at 3.]  He has worked in the research, development, testing, and evaluation of occupant protection systems such as seat belt restraints, inflatable restraints, seating systems, and crash protection devices for over 30 years.  [*Id*.]  His current work focuses on the analysis and evaluation of restraint and occupant protection systems, assessment of hardware design and performance, and analysis of occupant motion in response to applied crash forces in vehicles.  [*Id*. at 3–4.]  He is a member of several relevant professional organizations and has authored numerous publications concerning occupant protection systems and restraint systems.  [*Id*. at 4.]

According to Defendant, these "substantial differences render Mr. Markuskewski's opinions speculative and unreliable." [Doc. 100 at 5.] Plaintiffs, on the other hand, argue that reviewing frontal impact data for seat belt performance is acceptable methodology because a front collision involves "much more force on the seat belt" than a rear impact crash, and thus effectively shows whether the seat belt was defective. [Doc. 106 at 3–5.] Plaintiffs also argue that because there is no data in a Federal Motor Vehicle Safety Standards ("FMVSS") 301 rear crash test on seat belt performance, using frontal impact data is acceptable. [*Id*. at 4.]

The Court concludes that the issues Defendant raises regarding Mr. Markushewski's methodology are fodder for cross examination and do not render Mr. Markushewski's opinions unreliable. *See Paul L. Kennedy Enters. v. Manganaro Se., LLC*, No. 21cv01223, 2023 WL 2542110 (D.S.C. Jan. 21, 2023) (refusing to exclude expert testimony on the basis of the expert's methodology because such arguments were "merely fodder for cross examination, not a basis to exclude [the expert's] opinion" and "go to the weight of [the expert's] opinion, not the admissibility"); *see also Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017) ("Where, as here, the experts' opinions are not the junk science Rule 702 was meant to exclude, the interests of justice favor leaving the difficult issues in the hands of the jury and relying on the safeguards of the adversary system—vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" (cleaned up)). Mr. Markushewski's testimony should "be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010).

Accordingly, the Court denies Defendant's motion to exclude the testimony of Michael Markushewski.

### Motion to Exclude the Expert Testimony of Bruce Distell, M.D. Regarding Biomechanics

Defendant additionally moves to exclude Dr. Distell's testimony regarding biomechanics, arguing that Dr. Distell's report is an improper rebuttal opinion under Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure and, alternatively, that Dr. Distell is not qualified to give expert opinions related to biomechanics.  [Doc. 101.]  The Court agrees.

As set forth in the Fifth Amended Scheduling Order, Plaintiffs' deadline to identify expert witnesses was July 12, 2024, and Defendant's deadline to identify expert witnesses was August 12, 2024.  [Doc. 72.]  Plaintiffs identified Dr. Distell on September 18, 2024, as a rebuttal witness to the testimony of Defendant's expert David Camacho, M.D., Ph.D.  [Doc. 82; *see* Doc. 101-1.]  Dr. Camacho had reviewed Mr. Assey's medical imaging and concluded that Mr. Assey had pre-existing conditions that placed him at an increased risk of spinal injury and that there was no evidence of a hyperextension injury to the deep flexor muscles of his upper thoracic spine.  [Doc. 101-3.]  Dr. Distell rebutted these conclusions by opining that Mr. Assey's underlying spinal morphology would not have placed him in a higher risk category to suffer this type of injury, and additionally opined that Mr. Assey would not have sustained injuries but for his lower thoracic spine being positioned above the top of the seat back.  [Doc. 101-1 at 3–4.]

Defendant takes issue with this second opinion, arguing that it expands beyond the scope of Dr. Camacho's report and is therefore an improper rebuttal under Rule 26(a)(2)(D)(ii).  [Doc. 101 at 3–4.]  Alternatively, Defendant argues that as a diagnostic

8

radiologist trained in interpreting medical images, Dr. Distell is not qualified as a biomechanic to testify regarding the causal impact of Mr. Assey's position within the Subject Vehicle. [*Id*. at 4–5.] In response, Plaintiffs argue that Dr. Distell was rebutting Dr. Camacho's opinions that Mr. Assey's chest injuries likely resulted from broad force application on his back by the seat back and that Mr. Assey's spine was unable to straighten as the vehicle moved rearward and a stiffer seat would have increased the loads causing the injury. [Doc. 107 at 5.] Plaintiffs further argue that even if the Court were to find that Dr. Distell's opinions were novel, Defendant was not prejudiced by the rebuttal opinion because Dr. Distell was made available for deposition prior to the close of discovery and well in advance of trial. [*Id*. at 4.] Finally, Plaintiffs argue that just because "Dr. Distell is not trained in biomechanics does not mean that he is unqualified to testify as to injury causation," arguing that his experience in diagnosing and treating spinal injuries qualifies him to testify that the failure of the occupant protection system is more probably than not what caused Mr. Assey's injuries. [*Id*. at 4–5.]

The Court concludes that Dr. Distell's opinion that Mr. Assey would not have been injured but for his lower thoracic spine being positioned above the top of the seat back is an improper rebuttal opinion. Dr. Camacho is a radiologist who analyzed Mr. Assey's medical imagining and opined as to the type of spinal injury he received and any relevant underlying conditions. [*See* Doc. 101-3.] Dr. Camacho did not opine as to the design of the Subject Vehicle and how this may have impacted Mr. Assey's injuries. [*Id*.] Additionally, the Court is not convinced by Plaintiffs' argument that Dr. Distell's opinion that Mr. Assey's injuries were caused by his lower thoracic spine's position above the top

of the seat back is a rebuttal to Dr. Camacho's opinions regarding Mr. Assey's chest injuries or the stiffness of his spine as a result of pre-existing conditions.

Even if this improper rebuttal opinion was not prejudicial to Defendant, as Plaintiffs argue, the Court agrees with Defendant that Plaintiffs have not shown that Dr. Distell is qualified to offer an opinion on biomechanics.[5]  Beyond the conclusory argument that Dr. Distell's training as a diagnostic radiologist qualifies him to testify as to causation, Plaintiffs have not shown that Dr. Distell has the knowledge, skill, experience, training, or education to provide opinions in biomechanics.  *See* Fed. R. Civ. P. 702; [Doc. 101-4 at 3–4 (28:21–29:8) (Dr. Distell's testimony admitting that he is not a biomechanic, does not know what occupant kinematics is, and does not have experience in designing a motor vehicle).]  Moreover, that Plaintiffs have separately retained a biomechanics expert, Mr. Fijalkowski [*see* Doc. 112-3], further emphasizes that these are distinct areas of expertise and that any testimony by Dr. Distell in this area would be cumulative.

Accordingly, Defendant's motion is granted, and Dr. Distell's opinions regarding biomechanics are excluded.[6]

---

[5] Dr. Distell is a board-certified diagnostic radiologist with fellowship training in body, spine, and orthopedic imaging. [Doc. 101-1 at 2.] He graduated from Muhlenberg College in 1982 with a B.S. degree and from the University of Pennsylvania School of Medicine in 1986.  [*Id*.]  He completed his radiology residency and fellowships at Duke University and is currently the Section Chief of the Department of Radiology at Cape Fear Valley Health Systems and the Academic Department Chair of the Methodist University Cape Fear Valley Medical School.  [*Id*.]  He is also an assistant professor at the Campbell University School of Osteopathic Medicine.  [*Id*.]  According to Dr. Distell's report, 90% of his time is spent on clinical work, such as reading x-rays, CTs, MRIs, and other imaging modalities, and 10% of his time is dedicated to teaching and administrative duties.  [*Id*.]

[6] It is the Court's understanding that Defendant seeks to exclude only Dr. Distell's opinions regarding biomechanics, not his entire report.  [*See* Doc. 101.]  As such, the Court grants Defendant's motion as to only Dr. Distell's opinions regarding biomechanics.

**Motion for Partial Summary Judgment**

In its motion for partial summary judgment, Defendant asks the Court to grant it summary judgment on Plaintiffs' claims for punitive damages, manufacturing defect (under both strict liability and negligence theories), failure to warn (under both strict liability and negligence theories), and negligent design defect. [Doc. 102.] Specifically, Defendant argues that Plaintiffs have not presented evidence of willful or wanton conduct to support an award of punitive damages and have failed to provide the requisite expert opinions to support their claims for manufacturing defect and failure to warn. [*Id*. at 3–10.] Although Defendant does not challenge Plaintiffs' cause of action for strict liability based on design defect, it argues that Plaintiffs cannot support a claim for negligent design defect because there is no evidence that Defendant failed to exercise due care in designing the Subject Vehicle. [*Id*. at 10–11.]

### *Applicable Law*

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id*. at 257. When determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits. Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 256.

### *Analysis*

Plaintiffs assert both strict liability and negligence claims based on manufacturing defect, failure to warn, and design defect, as well as claims for punitive damages and loss of consortium. [Doc. 43 ¶¶ 25–68.] In a products liability action, a plaintiff can allege three types of defects: 1) a manufacturing defect, 2) a warning defect, and 3) a design defect.[7] *Watson v. Ford Motor Co.*, 699 S.E.2d 169, 174 (S.C. 2010). Under both negligence and strict liability theories, a plaintiff must establish "(1) that he was injured by the product; (2) that the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant; and (3) that the injury occurred because the product was in a defective condition unreasonably dangerous to the user." *Madden v. Cox*, 328 S.E.2d 108, 112 (S.C. Ct. App. 1985). South Carolina courts have explained that "'[t]he distinction between strict liability and negligence in design-defect and failure-to-warn cases is that in strict liability, knowledge of the condition of the product and the risks involved in that condition will be imputed to the manufacturer, whereas in negligence these elements must be proven.'" *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 326 (S.C. Ct. App. 1995) (internal quotation marks omitted). To establish negligence, the

---

[7] Because Plaintiff's alleged injuries occurred in South Carolina and the action was filed in this Court based on diversity of citizenship, South Carolina substantive law applies. *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 251 (4th Cir. 1999).

plaintiff must prove that the defendant seller or manufacturer "failed to exercise due care in some respect, and, unlike strict liability, the focus is on the conduct of the seller or manufacturer, and liability is determined according to fault." *Id*. at 326.

Here, Defendant seeks summary judgment on all of Plaintiffs' claims except those for loss of consortium and strict liability based on design defect. [*See* Doc. 102.]

<u>Count XI- Punitive Damages</u>

The Court begins, as Defendant does, with Plaintiffs' claim for punitive damages. In South Carolina, punitive damages may be awarded when a defendant's conduct is shown, by clear and convincing evidence, to be willful, wanton, or in reckless disregard of the rights of others. *S.C. Farm Bureau Mut. Ins. v. Love Chevrolet, Inc.*, 478 S.E.2d 57, 58 (S.C. 1996); *see also* S.C. Code Ann. § 15-33-135. Recklessness is a "conscious failure to exercise due care" and "implies the doing of a negligent act knowingly." *Solley v. Navy Fed. Credit Union*, 723 S.E.2d 597, 607 (S.C. Ct. App. 2012) (internal quotation marks omitted). "If a person of ordinary reason and prudence would have been conscious of the probability of resulting injury, the law says the person is reckless or willful and wanton, all of which have the same meaning—the conscious failure to exercise due care." *Id*. (internal quotation marks omitted).

Defendant argues that Plaintiffs fail to identify any conduct by Defendant to support their claim that Defendant acted in a wanton, willful, or reckless manner in designing and manufacturing the Subject Vehicle. [Doc. 102 at 3–5.] Defendant further argues that "undisputed evidence affirmatively shows that [Defendant] rigorously tested the [S]ubject [V]ehicle to ensure its safety before placing it on the market" and that the "driver's seat and seatbelt met or exceeded all applicable [FMVSS] standards at the time the Subject

14

Vehicle was designed and manufactured." [*Id*. at 4.] "These safety-conscious efforts," Defendant contends, "are incompatible with an award of punitive damages." [*Id*.]

In response, Plaintiffs argue that Defendant ignores the testimony of Plaintiffs' expert, Mr. Markushewski, as well as the testimony of Defendant's own expert, William Van Arsdell, that the seat belt webbing extended more than one inch in the Accident, which is in violation of the requirement set forth in FMVSS 209. [Doc. 109 at 21 (referencing Docs. 108-1 at 82–83; 109-5 at 3–4 (56:21–57:4)).] Plaintiffs further contend that Defendant failed to properly conduct due care testing and failed to warn Mr. Assey that he had a greater or enhanced risk of injury due to his size. [Doc. 109 at 21 (citing Doc. 108-1 at 42–43).] Thus, Plaintiffs argue, a reasonable juror could conclude that Defendant knew of and participated in willful, wanton, or reckless conduct. [Doc. 109 at 21.]

Because a jury could find the design decisions and manufacturing conduct by Defendant ignored known safety measures, industry standards, and foreseeable dangers, genuine issues of material fact remain as to whether Defendant's conduct rose to the level of willful, wanton, or in reckless disregard of Plaintiffs' rights so as to warrant punitive damages. The parties dispute whether the seat belt failed to meet applicable industry standards and to what extent Defendant knew or should have known of the risks associated with the seat belt and seat back for someone of Mr. Assey's size. Thus, summary judgment on this issue is denied.[8]

---

[8] The Court declines to grant summary judgment as to punitive damages as a request for relief, but notes that punitive damages cannot be brought as an independent cause of action. *See Monroe v. Bankers Life & Cas. Co.*, 102 S.E.2d 207, 208 (S.C. 1958).

<u>Counts II and III- Manufacturing Defect</u>

To support a manufacturing defect claim under either a strict liability or negligence theory, a plaintiff must show that the product was not manufactured in accordance with its design.[9]  *See Reed v. Tiffen Motor Homes, Inc.*, 697 F.2d 1192, 1196 (4th Cir. 1982). Specifically, "courts have identified a manufacturing defect as existing when a product does not conform to the design standards and blueprints of the manufacturer and the flaw makes the product more dangerous and therefore unfit for its intended or foreseeable uses."  *Britt v. Sorin Grp. Deutschland GMBH*, 690 F. Supp. 3d 538, 543 (D.S.C. 2023) (cleaned up).

Defendant argues that Plaintiffs have offered no evidence that there was a manufacturing defect in the Subject Vehicle's seat or seat belt.  [Doc. 102 at 7–8.] Specifically, Defendant notes that Plaintiffs' seat performance expert, Larry Sicher, has offered opinions only regarding *design* defects in the Subject Vehicle's seat [*see* Doc. 104-1 at 44–69], and that Plaintiffs' seat belt expert, Mr. Markushewski, has specifically acknowledged that "[i]t is not clear what the mechanism of failure is with the seat belt assembly" [Doc. 108-1 at 77].  [Doc. 102 at 7–8.]  However, Plaintiffs argue in response that Mr. Markushewski has "clearly opined" that the seat belt was in a defective condition [*see* Doc. 108-1 at 77], and that their biomechanics expert, Mr. Fijalkowski, has opined that the defective condition of the seat belt is causally linked to Mr. Assey's injury [*see* Doc. 109-6 at 3 (118:19–24)].  [Doc. 109 at 12–14.]  Further, Defendant's own

---

[9] The Court recognizes that there is some ambiguity in the distinction between what is required to establish a manufacturing defect claim as opposed to a design defect claim. *See Fisher v. Pelstring*, 817 F. Supp. 2d 791, 818 (D.S.C. 2011), *on reconsideration in part* (Jan. 11, 2012) (noting that there is "not an abundance of case law in South Carolina about how a manufacturing defect differs from other defects").

requirements state that the head restraint is not designed to come free from the seat back in a rear collision [Doc. 109-2 at 13 (145:1–4)], but in the Accident at issue, "[t]he head restraint was found detached from the driver's seat and the plastic outboard post was broken off" [Doc. 108-1 at 37].

Having reviewed the applicable law and the arguments and submissions of the parties, the Court concludes that summary judgment is inappropriate as to Plaintiffs' manufacturing defect claims. Though it appears to the Court that this is primarily a design defect case, Plaintiffs have presented sufficient evidence of manufacturing defects through their expert witnesses to submit this question to a jury. Accordingly, Defendant's motion is denied as to these claims.

<u>Counts III and IV- Failure to Warn</u>

To establish a claim for failure to warn, whether sounding in negligence or strict liability, a plaintiff bears the burden of proving by a preponderance of the evidence that a warning would have prevented his injury. *Bragg*, 462 S.E.2d at 331. "Once it is established that a product must display a warning to be safe, the question of the adequacy of the warning is one of fact for the jury as along as evidence has been presented that the warning was inadequate." *Allen v. Long Mfg. NC, Inc.*, 505 S.E.2d 354, 357 (S.C. Ct. App. 1998).

Defendant argues that Plaintiffs have not presented any admissible expert evidence regarding Defendant's alleged failure to warn, contending that although Plaintiffs' expert, Mr. Sicher, offered a conclusory opinion that Defendant failed to provide a sufficient warning, he is not qualified to testify about warnings and, regardless, has failed to connect Defendant's alleged failure to warn to Mr. Assey's injuries. [Doc. 102 at

8–10 (citing Doc. 104-1 at 44–69).]  Defendant further notes that Mr. Assey admitted in his deposition that he did not read all of the warnings provided to him by Defendant. [Doc. 102 at 9 (citing Doc. 104-1 at 89 (23:8–23), 90–91 (26:22–27:22)).]

In response, Plaintiffs argue that expert evidence regarding the adequacy of a warning is not required but that, nevertheless, Mr. Sicher is well qualified to opine about warnings and has previously testified as a warnings expert and his opinions on the inadequate warnings in this case raise a question for the jury.  [Doc. 109 at 19–20.]

The Court concludes that Plaintiffs have failed to offer sufficient evidence to prove a failure to warn claim under either a strict liability or negligence theory.  Regardless of whether expert testimony is required, Mr. Sicher's conclusory opinion that Defendant failed to provide a sufficient warning, without more, is insufficient to prove a claim for failure to warn.  [*See* Doc. 104-1 at 69.]  Plaintiffs have not pointed the Court to any additional evidence supporting their claim that the warnings provided to Mr. Assey were inadequate, nor have they retained a warnings expert.  Moreover, because Mr. Assey testified that he did not read all of the warnings provided by Defendant—specifically, the warnings contained in the owner's manual [*see id.* at 88 (19:17–19:22), 89 (23:4–23:23)]—Plaintiffs have not shown that a different warning would have made a difference in this case because Mr. Sicher's only opinion regarding an adequate warning was that one should have been included in the owner's manual [*see* Doc. 104-1 at 95 (107:1–6)]. *See, e.g.*, *Allen*, 505 S.E.2d at 359 ("The plaintiff has the burden of showing that a warning would have made a difference in the conduct of the person warned."); *Atanassova v. Gen. Motors, LLC*, No. 2:20-cv-01728-RMG, 2021 WL 683246, at *3 (D.S.C. Feb. 22, 2021) (granting summary judgment on a failure to warn claim when the plaintiffs did not read

the subject vehicle's owner's manual, warranty booklet and maintenance schedule, or service manual).  For these reasons, the Court grants Defendant's motion for partial summary judgment as to the failure to warn claims.

<u>Count I- Negligent Design Defect</u>

Unlike with strict liability, the focus in a negligent products liability claim "is on the conduct of the seller or manufacturer, and liability is determined according to fault." *Branham v. Ford Motor Co.*, 701 S.E.2d 5, 9 (S.C. 2010) (internal quotation marks omitted).  When pursuing a products liability claim under a negligent design theory, a plaintiff must establish the three requisite elements of a strict products liability claim and the additional element that the manufacturer or supplier failed to exercise reasonable care to adopt a safe design.  *5 Star, Inc. v. Ford Motor Co.*, 759 S.E.2d 139, 141 & n.3 (S.C. 2014).  This additional "burden may be met by showing that the manufacturer [or supplier] was aware of the danger and failed to take reasonable steps to correct it."  *Madden*, 328 S.E.2d at 112.

In its motion, Defendant simply contends that there is no evidence that Defendant failed to exercise due care in designing the Subject Vehicle because the vehicle met all FMVSS and all applicable Honda requirements and specifications.  [Doc. 102 at 11.] Plaintiffs respond by arguing that satisfying the FMVSS and Honda standards is a red herring because, as Mr. Sicher opined, the applicable FMVSS standards are inadequate and the Honda standards do not account for occupants larger than the 50th percentile male dummy.  [Doc. 109 at 6–7.]  Plaintiffs contend that the inadequacy of Defendant's testing (though technically complying with FMVSS and Honda standards) demonstrates that Defendant failed to exercise due care in designing the seat back in the Subject

Vehicle. [*Id.*] Plaintiffs further point to evidence that Defendant and its supplier failed to test the strength of the locking mechanism in the headrest, contradicting Defendant's assertion in its motion that Defendant "rigorously tested the [S]ubject [V]ehicle to ensure its safety before placing it on the market." [*Id.* at 8–9 (quoting Doc. 102 at 11).]

Having reviewed the applicable law and the arguments and submissions of the parties, the Court concludes that summary judgment is inappropriate as to Plaintiffs' negligent design defect claim. Plaintiffs have presented sufficient evidence that Defendant failed to exercise due care in designing the Subject Vehicle to submit this question to a jury. Accordingly, Defendant's motion is denied as to this claim.

## CONCLUSION

Based on the above analysis, Defendant's motion to exclude the expert testimony of Michael Markushewski [Doc. 100] is DENIED, Defendant's motion to exclude the expert testimony of Bruce Distell, M.D, regarding biomechanics [Doc. 101] is GRANTED, and Defendant's motion for partial summary judgment [Doc. 102] is GRANTED IN PART and DENIED IN PART. Defendant's motion for partial summary judgment is granted as to Plaintiffs' failure to warn claims based on strict liability and negligence theories and denied as to Plaintiffs' remaining claims. Accordingly, Plaintiffs' claims remaining in this case are as follows: design defect of the seat based on strict liability and negligence theories, manufacturing defect of the seat and seat belt based on strict liability and negligence theories,[10] punitive damages, and loss of consortium.

---

[10] Plaintiffs did not clearly state a cause of action for manufacturing defect of the seat belt based on strict liability in the Amended Complaint. [*See* Doc. 43 ¶¶ 39–51.] Nonetheless, Defendant has not raised that contention, has referenced the claim in the stipulation of dismissal [Doc. 99], and addresses the claim in its motion for partial summary judgment

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

April 18, 2025
Columbia, South Carolina

---

[Doc. 102 at 2, 7–8].  Accordingly, even assuming this cause of action was not originally pled, the Court finds that the Amended Complaint has been constructively amended to add it.  *See, e.g., Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 227 (4th Cir. 2001) (Wilkins, J., dissenting) ("It is well-settled that the parties may constructively amend the complaint by agreeing, even implicitly, to litigate fully an issue not raised in the original pleadings." (internal quotation marks omitted)); *United States v. Cochran*, 79 F. Supp. 3d 578, 583 (E.D.N.C. 2015) ("[A] party must amend the complaint, or the parties must constructively amend the complaint by, for example, agreeing to litigate fully an issue not raised in the original pleadings, or by addressing a theory of liability in their summary judgment briefs." (cleaned up)).